IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSIE BOPARAI, M.D., | Case No.: 1:09-cv-01164 AWI JLT |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS |
| v. | (Doc. 48) |
| ERIC K. SHINSEKI, et. al, | |
| Defendants. | |

Dr. Rosie Boparai was a physician employed by the Department of Veterans Affairs. (Doc. 1) In this role, in July and August 2006 she treated a patient who had a skin rash. (Doc. 49 at 6.) In October 2006, the patient again sought treatment for the rash at the VA's urgent care facility in West Los Angeles. Id. At that time, the patient was diagnosed with skin cancer. Id. On February 12, 2007, the patient's family filed a complaint related to the care the patient received. Id. at 7. A few weeks later, the patient died. Id. A group of peers reviewed the case and determined that "most experienced, competent practitioners might have managed the case differently.[1] (Doc. 49 at 7.)

Before these events, in 2006, Dr. Boporai filed an EEOC complaint claiming that she had

---

[1] It is unclear to the Court whether the peer review process was initiated due to the complaint or due to the patient's death.

1

suffered discrimination. (Doc. 1) Plaintiff contends that the conclusion of the peer review was incorrect and was retaliation for her earlier EEOC complaint. (Doc 49, Ex. 1 at 5) In furtherance of the retaliation, Plaintiff claims that Defendants also conducted an "open disclosure," during which they told information to the patient's family that blamed her for the patient's outcome. (Doc. 1)

In this motion, Plaintiff seeks, in essence, four categories of documents; documents related to the peer review for the patient-case at issue and statistical information related to other peer reviews conducted, the patient's medical records and demographic information related to other employees of the VA in the Greater Los Angeles ("GLA") area.

On November 8, 2010, the Court heard argument regarding this motion. The Court has read and considered the pleadings and the arguments of Dr. Boparai and counsel. For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to compel.

I. <u>Scope of Discovery</u>

The scope and limitations of discovery are set forth by the Federal Rules of Civil Procedure and Evidence. Fed.R.Civ.P. 26(b) states:

> Unless otherwise limited by court order, parties may obtain discovery regarding any nonprivileged manner that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things. . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the accident. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Further, relevance is interpreted "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." <u>Oppenheimer Fund, Inc. v. Sanders</u>, 427 U.S. 340, 351 (1978).

II. <u>Requests for Production of Documents</u>

The propounding party may request documents "in the responding party's possession, custody, or control." Fed.R.Civ.P. 34(a). A request is adequate if it describes items with "reasonable particularity;" specifies a reasonable time, place, and manner for the inspection; and specifies the form

or forms in which electronic information can be produced. Fed.R.Civ.P. 34(b). A request is sufficiently clear and unambiguous if it "places the party upon 'reasonable notice of what is called for and what is not.'" Kidwiler v. Progressive Paloverde Ins. Co., 192. F.R.D. 193, 202 (N.D. W. Va. 2000), quoting Parsons v. Jefferson-Pilot Corp., 141 F.R.D. 408, 412 (M.D.N.C. 1992); see also 2 Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial (2003) Discovery, para. 11:1886 (test is whether a respondent of average intelligence would know what items to produce).

The responding party must respond in writing and is obliged to produce all specified relevant and non-privileged documents, tangible things, or electronically stored information in its "possession, custody, or control" on the date specified. Fed.R.Civ.P. 34(a). In the alternative, a party may state an objection to a request, including the reasons. Fed.R.Civ.P. 34(b)(2)(A)-(B). When a party resists discovery, he "has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." Oakes v. Halvorsen Marine Ltd, 189 F.R.D 281, 283 (C.D. Cal. 1998), citing Nestle Food Corp. v. Aetna Cas. & Sur. Co., 135 F.R.D. 101, 104 (D.N.J. 1990). Finally, if a party "fails to respond that inspection will be permitted - or fails to permit inspection - as requested under Rule 34," the propounding party may make a motion to compel production of documents. Fed.R.Civ.P. 37(a)(3)(B)(iv).

III.   Analysis

   A.   38 USC § 5705

In 38 USC § 5705(a), Congress set forth the requirements for the Veterans Administration to assure the quality of the medicine provided to its veteran-patients. This section reads, in pertinent part,

> Records and documents created by the Department as part of a medical quality-assurance program (other than reports submitted pursuant to section 7311(g) of this title [38 USCS § 7311(g)]) are confidential and privileged and may not be disclosed to any person or entity except as provided in subsection (b) of this section.[2]

The Code of Federal Regulations contains an extensive regulatory scheme promulgated to effectuate the privilege created by 38 USC § 5705.    Notably, 38 C.F.R § 17.500(a) provides,

> Section 5705, title 38, United States Code was enacted to protect the integrity of the VA's medical quality assurance program by making confidential and privileged certain

---

[2] The exceptions outlined in subsection (b) do not apply here.

3

records and documents generated by this program and information contained therein. Disclosure of quality assurance records and documents made confidential and privileged by 38 U.S.C. 5705 and the regulations in §§ 17.500 through 17.511 may only be made in accordance with the provisions of 38 U.S.C. 5705 and those regulations.

The regulations identify four categories of quality assurance review documents that are protected from disclosure according to 38 USC § 5705. The two that are at issue here are, "(1) Monitoring and evaluation reviews conducted by a facility . . . [and] (2) Focused reviews which address specific issues or incidents and which are designated by the reviewing office at the outset of the review as protected by 38 U.S.C. § 5705 and the regulations in §§ 17.500 through 17.51."[3] 38 CFR 17.501(a)(1), (2). In addition, VHA Directive 2008-004 addresses peer review procedures and the confidentiality related thereto. (Doc. 48, Ex 1 at 1) The Directive specifically protects peer documents that identify individual providers, patients or reviewers or which contain "discussions relating to the quality of VA patient care." Id. at 2. Likewise, it makes confidential all documents related to peer reviews pursuant to 38 USC § 5705. Id. at 2-3. The Directive cautions, "All documents associated with the protected peer review need to be treated as strictly confidential, unless determined otherwise after careful review . . by qualified VHA personnel."[4] Id. at 4. The Directive continues, "A protected peer review is to be conducted as part of a facility's quality management program and may not be disclosed outside of the quality management process." Id.

On the other hand, the Directive permits disclosure of aggregated peer review findings as long as the confidentiality of the identities of those involved and the name of the providers is preserved. (Doc. 48, Ex 1 at 4) Likewise, any aggregated information and summary documents that do not identify VA patients, VHA employees or peer reviewers may be disclosed. Id.

Courts have considered the confidentiality imposed by 38 USC § 3705 and generally have

---

[3] Notably, 38 CFR § 17.508(e) permits medical personnel who provided care to the patient to have "access to confidential and privileged quality assurance records and documents relating to evaluation of the care they provided." Therefore, because Dr. Boparai was a doctor who provided care to the patient at issue, it appears that she is entitled to have "access" to the peer review documents. However, this does not resolve the inquiry into whether Dr. Boparai is entitled to discover and use of these documents in this litigation.

[4] Rather than determining that the peer review documents may be disclosed, the Defendant continues to maintain that it should remain confidential.

refused to allow disclosure of peer review documents in litigation.  For example, in <u>Bethel v. United States</u>, 242 FRD 580, 584 (D. Colo. 2007), the Court refused to compel production of peer review documents to a patient who claimed that he had suffered medical malpractice at the VA hospital although it granted disclosure of documents that were not made confidential by 38 USC § 3705, the instituting regulations or the VHA Directive 2002-043.  Thus, to the extent that Dr. Boparai seeks peer review documents, *except* aggregated information or peer documents that were created *before* the peer review, the motion is **DENIED.**

B.    Patient Medical Records

Dr. Boporai seeks copies of the medical records associated with the patient at issue and agrees that redaction may occur to preserve the patient's privacy.  Defendant objected to producing the documents based upon patient confidentiality but, at the time of hearing, clarified that it did so based upon its obligation to preserve the patient's privacy.  Thus, Plaintiff's motion for copies of the medical records of the patient at issue is **GRANTED** in redacted form.  Defendant is **ORDERED** to redact copies of the medical record of the patient at issue to remove or obliterate all patient identifiers and all identifying information.  The redacted records are **ORDERED** to be produced to Dr. Boporai no later than November 18, 2010.

C.    Request for Production of Documents - Set One

Request No. 1

Plaintiff requested documents related to the "open disclosure."  Defendant responded that the only document responsive is contained in the patient's medical record.  For the reason set forth above, the motion to produce documents responsive to Request No. 1 is **GRANTED** with the proviso that <u>all</u> of the patient's identifiers and all identifying information will be redacted.

Request No. 2

Plaintiff requested documents related to the peer review, root cause analysis and "any other review" related to the patient's care at issue.  Defendant provided policies related to the peer review process and identified the documents generated in the peer review as responsive but refused to produce the documents themselves based upon 38 USC § 5705 and VHA Directive 2008-004.  For the reasons set forth above, the motion to produce documents responsive to Request No. 2 is **DENIED**.

Request No. 3

Plaintiff requested documents relating "Risk Management" as to the care received by the patient at issue. In his written response, Defendant asserted the attorney-client and attorney work product privilege but responded that there were no documents responsive. At the hearing, the Defendant agreed to search again for responsive documents related to an entry in the patient's medical chart.

Therefore, Defendant is **ORDERED** to conduct a comprehensive search for responsive documents. If documents are found, Defendant is **ORDERED** to produce the documents or a privilege log no later than November 18, 2010. If the latter occurs, Dr. Boporai is permitted to review the privilege log and, if she believes it is insufficient, she will meet and confer with Defendant's counsel. If the parties cannot resolve the matter, Defendant is **ORDERED** to submit the privilege log and copies of the documents to the Court for an in camera review. If there are few documents, Defendant will provide the privilege log and the documents to the Court via e-mail to JLTorders@caed.uscourts.gov. Otherwise, Defendant will submit the documents to this Magistrate Judge Thurston's chambers via USPS other document service. If Defendant wishes return of the documents produced, he must provide a postage-paid, self addressed envelope. Otherwise, the Court will destroy the documents after review.

Request Nos. 4, 5 and 9

Plaintiff requested copies of the medical records of the patient at issue, photos of the patient's skin condition and all documents demonstrating that the patient had cancer on June 13, 2006 and any documents that demonstrate that the cancer diagnosis should have occurred while Dr. Boparai was the treating physician. As noted above, Defendant objected to the production request based upon patient privacy grounds. For the reasons set forth above, the motion to produce redacted documents (as described above) responsive to Request Nos. 4 and 5 is **GRANTED**.

Request No. 6

Plaintiff requested "non-privileged" peer review documents. In the joint statement, Plaintiff explained that she is seeking aggregated, statistical information relating to other peer reviews. Defendant responded to the request by stating that he has discovered and will produce responsive documents. Therefore, the motion to produce documents responsive to Request No. 6 is **GRANTED**.

Request No. 7

Plaintiff sought records related to "open disclosures" as to other patients that she did not treat and whose care is not at issue here. At argument, Plaintiff explained that she sought these records to determine whether other doctors had suffered Title VII violations as evidenced by discrimination-minded "open disclosures." Defendant explained that all documentation related to open disclosures are maintained in patient records.

The Court finds that Plaintiff has not demonstrated a legal basis for invading the medical records of patients whose care is not at issue here. Though it is possible that the records may demonstrate a discriminatory animus held by Defendant, Plaintiff has not alleged here that her peer review or the open disclosure event related to her patient occurred due to unlawful discrimination. Likewise, her complaint does not raise a hostile work environment claim.[5] (Doc 49 at 3-4) Plaintiff's complaint is limited to unlawful retaliation for filing the earlier EEOC complaint. Id. Moreover, even if she had alleged a hostile work environment, she would not be permitted to cite to other instances of discrimination to bolster her claim because she has made no claim that she knew of any. Brooks v. City of San Mateo, 229 F.3d 917, 924 (9th Cir. 2000)(acts of which the plaintiff was not aware cannot have caused her to believe that the work environment was hostile). Therefore, the motion to produce documents responsive to Request No. 7 is **DENIED**.

Request No. 8

Plaintiff seeks aggregated information about the demographic characteristics of the employees of the VA's GLA office. Also, she seeks the demographic information about those who participated in the open disclosure, peer review and risk management efforts related to the patient at issue. Defendant has responded that he has no responsive documents. However, Plaintiff has clarified that she was required to complete demographic questionnaire forms in 2009, so she knows that the documents exist, at least in 2009.

---

[5] Plaintiff's complaint alleges, as to the Court's jurisdiction that, "I am filing this case under Title VII (Discrimination due to race, color, religion, sex, national origin or reprisal." (Doc. 1) However, the complaint and the join statement clarify that the cause of action, however, is for retaliation "for my prior EEOC complaint in 2006 . . ." Id.

Defendant's counsel countered that simply because the documents were required in 2009 does not mean that similar documents existed in 2006 and 2007. Therefore, the Court **ORDERS** Defendant to conduct a comprehensive search for documents reflecting aggregated demographic information for all employees of the GLA for the time period June 2006 through December 2007 and documents reflecting the demographic information, if they exist, of those who participated in the open disclosure, peer review and risk management[6] efforts at issue in this case, related to the patient at issue. If documents are found, Defendant is **ORDERED** to produce them no later than November 18, 2010.

D. Requests - Set Two

Because the Request for Production Set Two was not served until September 15, 2010, one day before the discovery deadline, it was not timely. The Scheduling Order issued on February 17, 2010 reads, "The parties are ordered to *complete* all discovery pertaining to non-experts on or before September 16, 2010 . . ." (Doc. 14, emphasis added) Because propounding discovery one day before the deadline left insufficient time for Defendant to respond before the deadline, the Request for Production of Documents Set Two was not timely. Therefore, the motion to produce further documents responsive to the Request for Production of Documents Set Two, is **DENIED**.

**ORDER**

Based on the foregoing, the Motion to Compel Production of Documents (Doc. 48) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The Motion to Compel Production for Requests 1, 4, 5, 6 and 9 is **GRANTED**.
2. If any responsive documents exist, the Motion to Compel Production for Request 8 is **GRANTED**.
3. As to Request No. 3, Defendant is **ORDERED** to conduct a comprehensive search for responsive documents. If documents are found, Defendant is **ORDERED** to produce the documents or a privilege log no later than November 18, 2010. If the latter occurs, Dr. Boporai is permitted to review the privilege log and if she believes it is insufficient, she will meet and confer with Defendant's counsel. If the parties cannot resolve the matter,

---

[6] "Risk management" documents are limited to those outlined in the Court's order as to Request No. 3.

1         Defendant is **ORDERED** to submit the privilege log and copies of the documents to the Court for an in camera review.

3    4.   As to all remaining requests, the motion is **DENIED**.

4    5.   The Defendant is **ORDERED** to produce the documents required herein no later than November 18, 2010.

IT IS SO ORDERED.

Dated:   **November 12, 2010**                                 /s/ **Jennifer L. Thurston**
                                                                UNITED STATES MAGISTRATE JUDGE